**WO**                                                                                          JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|                                |                                        |
|--------------------------------|----------------------------------------|
| Ace B. Freemon,                | No. CV 09-1717-PHX-JAT (JRI)           |
| Plaintiff,                     | **ORDER**                              |
| vs.                            |                                        |
| Charles Ryan, et al.,          |                                        |
| Defendants                     |                                        |

Plaintiff Ace B. Freemon filed a civil rights action under 42 U.S.C. § 1983 against multiple officials from the Arizona Department of Corrections (ADC) (Doc. #6). Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. #22), which Defendants oppose (Doc. #27).

The Court will deny Plaintiff's motion without prejudice.

**I.      Background**

Plaintiff's claims arose during his confinement at the ADC Eyman Complex-Browning Unit (Doc. #6 at 1). He named the following Defendants: (1) Director Charles Ryan; (2) Security Threat Group (STG) Coordinator Lieutenant George Smith; (3) STG Investigator Lisa Celaya; (4) Deputy Warden Freeland; (5) STG Chair Robert Patton; and STG Committee Members (6) J. Freeland, (7) R. Bock, and (8) J. Kimble (id.). In Count I of his First Amended Complaint, Plaintiff alleged that Defendants violated his due process rights when, during the process to validate Plaintiff as an STG member, they failed to provide

him notice of the allegations against him (id. at 4-4(B)). In Count II, Plaintiff alleged that Defendants violated his Eighth Amendment rights when they subjected him to conditions-of-confinement that constituted cruel and unusual punishment, including limited food and outdoor recreation, constant lighting, and deliberate indifference to Plaintiff's medical needs stemming from a serious hand injury (id. at 5-5(B); see id. at 4(C)-4(D)).

The Court screened the First Amended Complaint and directed Defendants to respond (Doc. #7), and Defendants filed an Answer (Doc. #18).[1] Plaintiff then filed his Motion for Preliminary Injunction (Doc. #22).

## II. Motion for Preliminary Injunction

### A. Plaintiff's Motion

Plaintiff's request for injunctive relief relates to an injury he received in 2005 while working as an inmate recreation aid (id. at 2). He states that he suffered a serious injury to his left hand, which left a sensory nerve and a motor nerve cut (id.). Plaintiff proffers copies of a 2006 medical evaluation from the county hospital hand clinic and ADC medical records documenting his treatment and pain-medication prescriptions (id., Ex. A). Plaintiff avers that he continues to suffer numbness in part of his left hand as well as pain, for which he takes daily pain medication and uses silicone gel pads held with ace bandages (id. at 3; Doc. #23, Pl. Decl. ¶ 3). Plaintiff explains that since 2006, ADC physicians have issued Special Needs Orders (SNOs) requiring that Plaintiff be restrained with side restraints rather than behind-the-back restraints due to his injury (Doc. #22 at 3; Doc. #23, Pl. Decl. ¶ 5). He attaches a copy of the side-restraints SNO that was authorized by Dr. Jeffrey A. Sharp on May 28, 2008, and was to be in effect for one year (Doc. #22, Ex. B). Plaintiff alleges that in September 2008, Ryan and Deputy Warden Freeland rescinded all SNOs for alternative restraint methods (id. at 3-4).

Plaintiff further alleges that his hand injury severely limits his ability to write legibly

---

[1] Ryan, J. Freeland, Bock, Kimble, and Patton filed an Answer (Doc. #18); Smith and Celaya have not been served (see Doc. #38, Order providing additional time to serve these Defs.).

or for any length of time, which in turn prevents him from writing to his family or drafting legal documents (id. at 4). Plaintiff states that he must rely on another inmate to draft legal documents, and he submits the declaration of William Mark Isbell, an ADC inmate who avers that he has drafted all of Plaintiff's legal documents due to Plaintiff's inability to write legibly (id., Ex. C, Isbell Decl. ¶¶ 1-3). Plaintiff contends that he has requested permission to obtain a typewriter in his cell as a reasonable accommodation for his condition, and he proffers a copy of the response to his July 31, 2008 inmate letter about a typewriter (id., Ex. D). This response informs Plaintiff that he must go through medical and then only a court can order a typewriter (id.). Plaintiff also proffers a copy of an ADC memorandum documenting that typewriters are authorized on a case-by-case basis when there is a court order (id., Ex. E).

Plaintiff therefore requests a court order allowing him to purchase and possess a typewriter (id. at 5). He submits that his condition constitutes a disability and, under the Americans with Disabilities Act and Rehabilitation Act, the ADC is required to make reasonable accommodations (id. at 6). He argues that a typewriter is not an unreasonable accommodation, and that ADC has allowed and still allows typewriters for individual prisoners who have a court order; thus, the balance of hardships tips in Plaintiff's favor (id. at 6, 9). Plaintiff maintains that there is a likelihood of success on the merits in this case, particularly with respect to his medical care claims (id. at 7-8). And finally, he argues that this relief will serve the public interest because it adheres to federal law (id. at 8).

**B.     Defendants' Response**

Defendants oppose Plaintiff's motion and argue that his requests for a typewriter and side restraints are unrelated to the due process and conditions-of-confinement claims in the underlying complaint (Doc. #27 at 1-2, 10). Defendants assert that Plaintiff's motion raises entirely new issues and seeks affirmative relief rather than relief that would simply maintain the status quo (id. at 2).

Defendants contend that even if Plaintiff's motion was related to his claims, he has not shown an irreparable injury or a likelihood of success on the merits (id. at 4). They assert

that ADC prohibits possession of typewriters for security reasons and to prevent inmates from using typewriter parts to fashion weapons; however, inmates with qualifying disabilities and a court order are provided typewriters (id. at 4-5). Defendants note that there is no evidence that after receiving the response to his 2008 inmate letter, Plaintiff ever attempted to have his need for a typewriter evaluated by medical personnel (id. at 5). They also point out that Plaintiff does not indicate whether he is right or left-handed nor has he shown that typing with his injury would be any easier than writing (id.). Defendants submit that without a showing of a medical need, there is no showing of irreparable harm (id. at 6).

With respect to Plaintiff's claim that he should be provided a typewriter as an accommodation under the ADA, Defendants contend that Plaintiff has met none of the requirements for establishing that he has a qualifying disability (id. at 6-7).

Lastly, as to the request for side restraints, Defendants assert that because there is no evidence that Plaintiff exhausted this claim through the ADC administrative grievance process, the request for relief related to this claim must be denied (id. at 9). They also assert that Plaintiff has not demonstrated irreparable harm because he alleges no facts showing an irreparable injury or harm, and his request for relief comes almost two years after the rescission of SNOs, suggesting that the change in restraints is not significant (id. at 9-10). And Defendants maintain that there is little likelihood of success on the merits because side restraints are not as secure and behind the back restraints (id. at 10).

**C.     Plaintiff's Reply**

Plaintiff replies that his request for injunctive relief concerns harm that is related to his underlying claims (Doc. #32 at 1-2). He also maintains that Ryan and Freeland are aware of his claims concerning side restraints because he tried to resolve the problem though the ADC grievance system (id. at 2, 6). Plaintiff contends that Ryan's and Freeland's rescission of the SNO issued by physicians clearly constitutes deliberate indifference; thus, injunctive relief is appropriate (id. at 4).

As to the request for a typewriter, Plaintiff argues that his declaration sufficiently evidences that Plaintiff's condition constitutes a qualified disability, that he is unable to draft

1 legal papers or communicate with family, and that ADC allows typewriters for other inmates
2 (id. at 5).

**III. Preliminary Injunction Standard**

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The movant has the burden of proof on each element of the test. Envtl. Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

**IV. Analysis**

The Court construes Plaintiff's Motion for Preliminary Injunction as a request for an order for both a typewriter and an SNO for side restraints.

**A. Typewriter**

Defendants contend that Plaintiff's request for a typewriter is unrelated to the underlying claims and therefore inappropriate (Doc. #27 at 1). Defendants are correct that an injunction should not issue if "is not of the same character, and deals with a matter lying wholly outside the issues in the suit" (id., citing Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997)). But "where the preliminary relief is directed to the prisoner's access to the Courts, a nexus between the preliminary relief and the ultimate relief sought is not required." Prince v. Schriro, et al., 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009),[2] citing Dimaontiney v. Borg, 918 F.2d 793, 796 (9th Cir. 1990). Plaintiff's request for a typewriter

---

[2] See Prince v. Schriro, et al., CV 08-1299-PHX-SRB (JRI) (Doc. #32, Order adopting R & R at Doc. #28).

relates to his alleged inability to draft legal documents and litigate this action, i.e. his access to the court. Therefore, the Court need not consider the merits of the underlying suit in determining whether to grant the request for an injunction. See Dimaontiney, 918 F.2d at 796.

Although there is a constitutional right of access to the courts, Bounds v. Smith, 430 U.S. 817, 821 (1977), there is no constitutional right to a typewriter in prison. Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 858 (9th Cir. 1985). The Ninth Circuit has held that inmates have no right to a typewriter to prepare legal documents as long as there remains some other means of preparing legal documents. Phillips v. Hust, 477 F.3d 1070, 1077 (9th Cir. 2007), vacated on other grounds, 129 S. Ct. 1036 (2009).

Plaintiff submits that he is effectively unable to handwrite his documents (Doc. #22 at 4; Doc. #23, Pl. Decl. ¶ 10). See id. (if handwritten documents are permitted by court rules, it is a sufficient alternative to a typewriter). As Defendants point out, however, Plaintiff does not explain how his hand injury and pain would be less affected by typing than by writing. More importantly, the record shows that the ADC provides typewriters to those with a "qualifying disability" and a court order (Doc. #22, Ex. E; Doc. #27 at 4). Yet Plaintiff does not indicate whether he went through—or attempted to go through—medical to request evaluation for a typewriter following his 2008 inquiry about a typewriter. And while Plaintiff avers that he has a "qualifying disability," the medical records he submits are not recent—they are all from 2006 (Doc. #22, Ex. A). Absent recent medical records and more specific facts supporting Plaintiff's request for a typewriter, such as evidence that he has pursued or attempted to pursue the avenues available for obtaining a medical opinion supporting authorization for a typewriter, an injunction is not appropriate at this time.

Accordingly, Plaintiff's request for an order for a typewriter will be denied.

**B.    Side Restraints**

At the outset, the Court notes that, contrary to Defendants' assertion, Plaintiff did not wait two years to bring this request for injunctive relief in the pending motion. In his request for relief in the First Amended Complaint, Plaintiff specifically sought an order for

1 | reinstatement of the side-restraint SNO (Doc. #6 at 6 ¶ F).

2 | Defendants do not dispute that Plaintiff suffered a hand injury and permanent nerve damage in his left hand, or that he was issued a side-restraints SNO by ADC physician Dr. Sharp that was to be in effect through May 2009 (see Doc. #22, Exs. A-B). Nor do Defendants deny that Ryan and Freeland rescinded the SNO in September 2008.

Defendants' argument that Plaintiff failed to claim that he exhausted his remedies is incorrect (see Doc. #27 at 9). Plaintiff indicated in his declaration that he exhausted remedies for this issue (Doc. #23, Pl. Decl. ¶¶ 8-9). Plaintiff also indicated in his First Amended Complaint that he exhausted administrative remedies for all his claims (Doc. #6 at 4, 5). And, despite Defendants' contentions otherwise, the allegation that Ryan and Freeland were deliberately indifferent when they rescinded the side-restraints SNO is clearly set forth as one of Plaintiff's claims (id. at 4(D), 5(B)). Regardless, as Plaintiff asserts, he is not required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216 (2007), and Defendants submit no evidence that he failed to exhaust remedies for this claim.[3]

Defendants proffer no affidavits or other evidence to support their claim that side restraints are less secure than behind-the-back restraints (see Doc. #27 at 10). And their contention that "it is not self-evident that one type of restraint is more painful than another" is belied by evidence that an ADC physician ordered a side-restraints SNO due to Plaintiff's injury and "neuropathic pain" (id; Doc. #22, Ex. B). As to whether Plaintiff has shown a likelihood of success on the merits, the Court notes that intentionally interfering with an inmate's physician-prescribed treatment may constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 104-105 (1976).

Nonetheless, the Court finds that Plaintiff fails to set forth specific facts indicating that he is subject to a threat of irreparable harm. To meet the irreparable harm requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. Caribbean

---

[3]The proper avenue for a raising a failure-to-exhaust claim is through an unenumerated 12(b) motion. See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988).

1 Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). This requires Plaintiff to demonstrate by specific facts that there is a credible threat of immediate and irreparable harm. See Fed. R. Civ. P. 65(b). Plaintiff shows that he previously had a side-restraints SNO; however, he does not sufficiently demonstrate the specific harm he is presently facing absent reinstatement of the SNO. Although Plaintiff alleged that in November 2008, during transport from his cell to the shower, he was "notified" that alternative restraint methods would no longer be used, he does not state whether officers actually employed the behind-the-back restraints nor does he indicate the harm he suffered, if any, as a result (Doc. #22 at 3). Plaintiff's request for injunctive relief related to side restraints will therefore be denied.

In sum, the Court finds that Plaintiff has not met his burden to demonstrate entitlement to a preliminary injunction, particularly an injunction that alters rather than maintains the status quo. See Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that mandatory, as opposed to prohibitory, injunctions are subject to heightened scrutiny). His motion will be denied without prejudice to refiling.

**IT IS ORDERED that** the reference to the Magistrate is **withdrawn** as to Plaintiff's Motion for Preliminary Injunction (Doc. #22), and it is **denied** without prejudice.

DATED this 1st day of July, 2010.

James A. Teilborg
United States District Judge